# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| GLORIA BRIGGS, o/b/o CDB, | *
Plaintiff, | *
vs. | * CIVIL ACTION NO. 17-00314-B
NANCY BERRYHILL, Acting Commissioner of Social Security, | *
Defendant. | * |

## ORDER

Plaintiff, Gloria Briggs (hereinafter "Plaintiff"), brings this action on behalf of a minor child, C.D.B. (hereinafter "the claimant"), seeking judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's claim for child supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. On April 11, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, this case was referred to the undersigned to conduct all proceedings through entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 20). Oral argument was conducted on May 16, 2018. (Doc. 22). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **<u>Procedural History</u>**[1]

Plaintiff filed an application for supplemental security income benefits on behalf of the claimant on March 28, 2014, when he was eight years old. (Doc. 11 at 162). Plaintiff alleged that the claimant has been disabled since January 1, 2011, due to "ADHD" (attention deficit hyperactivity disorder). (<u>Id.</u> at 179, 182). Plaintiff's application was denied at the initial stage on July 1, 2014. (<u>Id.</u> at 106). Plaintiff filed a timely Request for Hearing, and on November 19, 2015, Administrative Law Judge Marni McCaghren (hereinafter "ALJ") held an administrative hearing, which was attended by Plaintiff (the claimant's grandmother and legal guardian), the claimant (who at the time was nine years old), and Plaintiff's attorney. (<u>Id.</u> at 41).

On February 1, 2016, the ALJ issued an unfavorable decision finding that the claimant is not disabled. (<u>Id.</u> at 21). The Appeals Council denied Plaintiff's request for review on May 26, 2017. (<u>Id.</u> at 5). Therefore, the ALJ's decision dated February 1, 2016, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issue on Appeal

**Whether substantial evidence supports the ALJ's assignment of weight to the expert opinions in this case?**

## III. Factual Background

The claimant was born on November 29, 2005, and was eight years old at the time that the Plaintiff (the claimant's grandmother and legal guardian) filed an application for supplemental security income benefits on March 28, 2014, alleging that the claimant was disabled as a result of ADHD. (Doc. 11 at 162, 179). According to Plaintiff, the claimant lives with her and receives treatment at Alta Pointe with Dr. Eric Leonhardt, M.D., for ADHD, mental retardation, autism, and anxiety disorder. (Doc. 12 at 2; Doc. 11 at 324).

At the administrative hearing, Plaintiff testified that the claimant was nine years old and in the third grade, that he was in regular classes but received special accommodation, that he repeated the first grade, that his grades were poor, that he had trouble with understanding and comprehension, and that he had been suspended from school and after school care for behavioral issues such as hitting, throwing things, refusing to sit down, and temper tantrums. She also testified that he was dismissed from a football team for fighting with his teammates. (Id. at 46, 57-58). The claimant takes medication for ADHD and attends therapy once a month.

3

(Id. at 54-60).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

**V.    Statutory and Regulatory Framework – Childhood Disability Law**

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996. See Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c). The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

See 42 U.S.C. § 1382c(a)(3)(C)(i), 20 C.F.R. § 416.906. The regulations provide a three-step sequential evaluation process for determining childhood disability claims. 20 C.F.R. § 416.924(a).

At step one, a child's age and work activity, if any, are identified to determine if he has engaged in substantial gainful activity. At step two, the child's physical/mental impairments are examined to see if he has an impairment or combination of impairments that is severe. Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). To the extent the child is determined to have a severe impairment, at step three, the Commissioner must then determine whether the impairment or

5

combination of impairments meets or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement. 20 CFR § 416.924.

A child's impairment(s) meets the listings' limitations if he or she actually suffers from limitations specified in the listings for the severe impairment. Shinn v. Commissioner of Soc. Sec., 391 F.3d 1276, 1279 (11th Cir. 2004). A child's impairment(s) medically equals the listings if his or her limitations are at least of equal severity and duration to the listed impairment(s). Id. (citing 20 CFR § 416.926). Where a child's impairment or combination of impairments does not meet or medically equal any listing, then the Commissioner must determine whether the impairment or combination of impairments results in limitations that functionally equal the listings. 20 CFR § 416.926a. To establish functional equivalence in step three, the claimant must have a medically determinable impairment or combination of impairments that results in marked limitations in two functional domains or an extreme limitation in one domain. 20 CFR § 416.926a(a). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 CFR 416.926a.

**VI. Discussion**

## A. Substantial evidence supports the ALJ's assignment of weight to the expert opinion evidence in this case, as well as the ALJ's determination that the claimant is not disabled.

In her brief, Plaintiff argues that the ALJ erred in assigning more weight to non-examining State Agency consultants, Dr. Linda Duke, Ph.D. (psychologist), Dr. Howard Harper, M.D. (pediatrician), and Rebecca Root, CCC (speech language pathologist), than to the claimant's treating psychiatrist, Dr. Eric Leonhardt, M.D., and the claimant's teacher, Ms. Hands McCorvey; therefore, the ALJ's determination that the claimant is not disabled is not supported by substantial evidence. (Doc. 12 at 1). The Commissioner counters that the ALJ's assignment of weight to the expert opinions in this case was based on their consistency with the record evidence and, further, that the ALJ's determination that the claimant is not disabled is supported by substantial record evidence. (Doc. 15 at 5). Having carefully reviewed the record, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS

7

12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or

8

unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In addition, the Social Security regulations and rulings require that an ALJ "consider all relevant evidence in the case record," and this includes opinion evidence from other non-medical sources. SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, *4. When evaluating child disability claims, teachers, as well as other non-medical personnel who are able to observe and interact with a child on a daily basis, are valuable resources in determining the severity of a child's impairment and how a child typically functions compared to other children his age. 20 C.F.R. § 416.913(d); 20 C.F.R. § 416.924a(a)(2)(iii) (in child disability cases, the ALJ considers school personnel assessments about how a child is functioning at school on a day-to-day basis compared to other children the child's age who do not have impairments).

9

"Social Security Ruling 06-03p, which addresses evidence from non-medical sources, provides that, where the non-medical source has seen the claimant in his or her professional capacity, the evaluation of that evidence is fact-specific, considering the nature and extent of the relationship between the source and claimant, the source's qualifications and expertise, the extent to which the source provides relevant evidence to support his or her opinion, and the consistency of that opinion with other evidence." Reed v. Astrue, 2009 U.S. Dist. LEXIS 99357, *7-8, 2009 WL 3571699, *2 (S.D. Ala. October 26, 2009) (unreported) (internal quotation marks omitted). "Under certain circumstances, the opinion of such a source may be entitled to greater weight than a medical source, even a treating source." Id.

In the instant case, the ALJ found that the claimant was not engaged in substantial gainful activity and that his diagnoses of attention deficit hyperactivity disorder (ADHD), autism spectrum disorder, learning disability (borderline intellectual functioning), and anxiety constituted "severe" impairments. (Doc. 11 at 24). The ALJ then determined that the claimant's impairments did not meet, medically equal, or functionally equal any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 25).

With respect to the functional equivalence domains, the ALJ found that the claimant had a "marked" limitation in the domain of

caring for oneself,³ "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being, and "no limitation" in the domain of moving about and manipulating objects. (Id. at 25-36). Accordingly, the ALJ concluded that the claimant is not disabled under the Act. (Id. at 36). The record supports the ALJ's conclusions.

Specifically, the claimant's treatment records from Franklin Primary Health Center ("Franklin") from January 2013 to April 2014, and Alta Pointe Health Systems ("Alta Pointe") from March 2013 to October 2015, show, as the ALJ found, that the claimant was a third grader who repeated the first grade; he was in regular classes but received special accommodations and special assistance; he was diagnosed with ADHD at age six with symptoms of hyperactivity, inattention, decreased appetite, and behavioral difficulties; and

---

³ This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes not only how well the child takes care of his own health, possessions and living area, but, also, how well the child copes with stress and changes in the environment. See 20 C.F.R. § 416.926a(k); SSR 09-7p, 2009 WL 396029.

11

he had no physical impairments and was able to take care of his own personal needs.[4] (Doc. 11 at 27, 218, 223, 233, 310-22, 327-405).

The claimant's treatment records from Franklin and Alta Pointe also show that his grandmother reported problems with his behavior in class, lack of attention, frustration, and preference for solitary activities. (Doc. 11 at 27, 327-405). Despite these reports, the claimant's mental examination findings consistently reflected normal memory and concentration, logical thoughts, fair judgment and insight, appropriate affect, normal mood, good sleep, good appetite, behavior appropriate for his age, and denials of major mood swings, irritability, aggression, anxiety, or crying spells. (Doc. 11 at 27, 310-323, 327-94). Indeed, the claimant's treatment providers commented "anxiety resolved;" "mild" behavioral issues at school; "attention and concentration are good;" "mom reported he is attentive in class, grades improved;" "normal behavior;" "cooperative;" anxiety resolved; "no further bedwetting;" "in the office he is calm and cooperative;" "no side effects" from medications reported or noted; "consumer is stable on current medications;" and "he is doing well." (Id. at 315, 327, 330, 337-38, 343, 346-47, 352-54, 357, 365, 370, 387, 393).

Likewise, the claimant's most recent treatment records from

---

[4] The record shows that, at one time, the claimant had problems with bed wetting. However, his medical records reflect that the problem resolved, with no reported problems in more recent doctor visits. (Doc. 11 at 310, 334, 337, 343, 346, 354, 387-405).

12

Alta Pointe reflect that his medications were working without side effects, that his symptoms were stable and improved, that his mood was improved, that he had good focus and attention, that his mental examination findings were "normal," that his grades were "fair to good," that his "overall behavior [was] manageable," that he was "doing well," with no mood swings, no depression, no melt downs, and no crying spells, that his problems were "slight," and that, during the office examination, he was calm, cooperative, appropriate, and pleasant. (Id. at 327-31, 387-98).

The claimant's school records confirm that his grades were below average[5] and that he received special education services with individualized adapted reinforcement two times a week; however, they also show that he had broad interests including playing sports and participating in computer activities. (Id. at 27, 208-46, 265-98, 310). It was further noted by his school evaluators (including his teachers) that his behavior problems did not impede his learning or the learning of others. (Id. at 216, 220). In his second grade IEP assessment, it was noted that he was performing math at grade level and that he could read fluently on a first-grade level and could read most words on the second-grade level. (Id. at 216, 218). The claimant's grandmother likewise reported improvement with his academics and stated that she was pleased with his performance.

---

[5] The claimant's third grade progress report dated October 2015 reflects that he made a "D" in English and Math. (Doc. 11 at 265).

13

(Id. at 218).

The record further confirms that the school psychometrist, Kathryn Jones, Ed. S., administered an IQ test in April 2013, which resulted in a Full-Scale IQ Score of 77, indicating borderline intellectual level. (Id. at 270, 275). In 2014 and 2015, IEPs were completed by the claimant's teachers, Ingrid McCants, Marjorie Foster, and Angela Cochran, in which they noted that he required special assistance in math and reading but that his behavior was not a concern. (Id. at 216-18, 226, 232-33). It was further noted that the claimant "understands how to solve 'adding to' and 'taking from' problems within 20," and that he is able to represent and compare two 2-digit numbers, measure the length of an object, and identify 3-dimensional shapes and their attributes. (Id. at 297-98).

In addition, in June 2014, State Agency consultants, Dr. Linda Duke, Ph.D. (psychologist), Dr. Howard Harper, M.D. (pediatrician), and Rebecca Root, CCC (speech language pathologist), reviewed the claimant's medical records and opined that he had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being, and no limitation in moving about and manipulating objects and caring for himself. (Id. at 97-99). The

ALJ assigned great weight to these opinions, finding that they were consistent with the substantial record evidence.[6] (Id. at 28).

Plaintiff argues, however, that the ALJ erred in assigning "great weight" to the opinions of the State Agency consultants, while only assigning "some weight" to the opinions of the claimant's treating psychiatrist, Dr. Eric Leonhardt, M.D. The record shows that Dr. Leonhardt began treating the claimant at Alta Pointe in March 2013 and diagnosed him with ADHD, mental retardation, autism, and anxiety disorder. (Id. at 324). On December 2, 2014, Dr. Leonhardt opined that these conditions would not result in the claimant being "incapacitated" for any single continuous period of time but would require care on an "intermittent" basis, such as a medication check once every three months for fifteen minutes and a one-hour therapy session per month. (Id. at 325). Dr. Leonhardt further opined that the claimant's conditions would cause episodic flare ups periodically preventing him from participating in normal daily activities, that these flare ups were estimated to occur approximately one time per week lasting three hours in duration,

---

[6] The ALJ's findings differ from the opinions of the State Agency consultants in one regard. The State Agency consultants found no limitation in the claimant's ability to care for himself. However, the ALJ found that the claimant had a marked limitation in this domain based on his inability to conform his behavior to school or church rules and his inability to demonstrate consistent self-control. (Doc. 11 at 34). Because the ALJ found that the claimant had only one marked limitation in the six functional domains, he did not functionally meet a Listing; therefore, is not disabled. 20 C.F.R. § 416.926a(d).

15

and that he would need "support" during these episodes. (Id. at 326). The ALJ assigned "some weight" to Dr. Leonhardt's opinions but disagreed with Dr. Leonhardt's diagnosis of mental retardation. The ALJ found Dr. Leonhardt's mental retardation diagnosis was inconsistent with the substantial record evidence, including Dr. Leonhardt's own treatment records from Alta Pointe and those of the other treatment providers at Alta Pointe, which documented repeated diagnoses of borderline intellectual functioning and consistently normal mental examination findings, as detailed above.[7] (Id. at 327-35, 337-38, 340, 346, 347-55, 365-84, 390-91). In addition, the claimant's school records reflect that he tested in the borderline range of intelligence, not that he was mentally retarded.[8] (Doc. 11 at 270, 275). For these reasons, and based on the Court's review of the record as detailed above, the Court finds that the ALJ's decision to assign only "some weight" to Dr. Leonhardt's opinions is supported by substantial evidence.

Likewise, Plaintiff claims that the ALJ erred in assigning "little weight" to the opinions of the claimant's teacher, Ms. McCorvey, set forth in a letter in which she stated that the

---

[7] Dr. Leonhardt offered no opinion on the claimant's level of functioning in any of the specific six functional domains.

[8] The claimant's records at Franklin Primary Health Center consistently noted that his behavior was "appropriate for [his] age." (Doc. 11 at 312, 315, 319, 322). These records are also inconsistent with Dr. Leonhardt's diagnosis of mental retardation.

16

claimant's behavior was getting worse, that he had to be isolated from the other students because of his behavior, such as hitting and pushing, that he refused to take responsibility for his actions, that he was untruthful, and that he ignored adult authority. (Id. at 266). The ALJ gave the letter "little weight" to the letter because it was undated, thus making it unclear as to the time frame during which the opinion was rendered, and because it was inconsistent with the substantial record evidence. The Court agrees. As detailed above, the recent medical and school evidence reflects that the claimant's behavior had improved, that his conditions were stabilized with the current treatment regimen, and that his symptoms were not an obstacle to his ability to learn or to those around him.[9] (Id. at 216, 218, 226, 330, 337, 346-47, 352-54, 387, 390, 393). Given all of the foregoing evidence detailed herein, the Court finds that the ALJ had good cause to give little weight to the opinions of claimant's teacher, Ms. McCorvey, and only some weight to the opinions of the claimant's treating physician, Dr. Leonhardt.

Having reviewed the record at length, the Court finds that the substantial evidence supports the ALJ's assignment of weight to the

---

[9] The claimant's most recent treatment records reflect that the claimant's grandmother reported to his physician that the claimant's mood was good, that his behavior was manageable, and that he had not exhibited any anxiety attacks, major mood swings, depression, meltdowns, or crying spells; thus, she did not want an increase in his medication. (Doc. 11 at 390).

17

expert opinion evidence in this case and that the ALJ's determination that the claimant is not disabled as a result of his ADHD, autism spectrum disorder, learning disability (borderline intellectual functioning), and anxiety is supported by substantial evidence. Accordingly, Plaintiff's claims are without merit.[10]

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for child supplemental security income be **AFFIRMED**.

**DONE** this **27th** day of **June, 2018.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**

---

[10] Although Plaintiff has cited evidence in the record which she claims supports a finding that the claimant is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").